### SYLVIA CUMMINGS *vs.* CHARLES B. HODGDON.

Under *St.* 1839, *c.* 117, which established separate terms of the court of common pleas, in the county of Middlesex, for the transaction of civil and criminal business, a complaint, under Rev. Sts. *c.* 49, by the mother of a bastard child, against the alleged father, must be entered and proceeded with at a term held for the transaction of criminal business.

THIS was a complaint against the respondent, under the Rev. Sts. *c.* 49, which provide for "the maintenance of bastard children." The respondent was examined before the police court of Lowell, on the 26th of September 1846, and was ordered, by said court, to give a bond, with sureties, for his appearance at the court of common pleas, then next to be holden at Lowell, on the third Monday of October 1846, then and there to answer to the accusation set forth in said complaint. Thereupon a bond was given accordingly, by the respondent, and this complaint was entered at said term, when the respondent appeared by his attorney, and made a written

motion that the complaint might be dismissed for want of jurisdiction in the court; the court, at said term, having jurisdiction of criminal business only; whereas the respondent ought to have been ordered to appear at the term of said court, for civil business only, on the second Monday of December 1846. The court ordered the complaint to be dismissed, and the complainant alleged exceptions to the order.

*Caverly*, for the complainant.

*B. F. Butler*, for the respondent.

SHAW, C. J. This is a prosecution under the bastardy act, (Rev. Sts. *c.* 49,) and the question is, whether it should have been entered and prosecuted at the court of common pleas for this county, held for criminal business, or that held for civil business.

This division of the terms of the court of common pleas for the county of Middlesex was established by *St.* 1839, *c.* 117. By § 1, several additional terms were established " for the disposition of the criminal business of said county." By § 2, it was provided that all appeals, recognizances and processes, and every other matter and thing of a criminal nature, which would have been returnable at the succeeding term at Concord, should be returnable to, and have day in court at, the next term thus established for criminal business. By § 3, all civil business of the court of common pleas for the county was required to be transacted *only* at the terms before established. And it was required that the criminal business should be acted upon *only* at the terms appointed by said act to be holden. And all continuances, without any special order, were directed to be from any criminal term to the next criminal term, and from any civil term to the next civil term.

Thus it appears to have been the purpose of the legislature to make an entire division of the business, as if there had been distinct courts, to be held by distinct judges.

In point of fact, the complaint, in the present case, was entered at a criminal term. A motion was made to dismiss the suit for that cause, on the ground that it should have been

entered at the term held for civil business. This motion was sustained, and the suit, by order of the court, was dismissed. To this order the complainant excepted, and the exception was allowed. The question is, whether the suit was rightly entered; and this depends upon another, which is, to which of the above classes, civil or criminal, this proceeding belongs.

Proceedings under the bastardy laws are exceedingly anomalous. They partake partly of a civil and partly of a criminal character. The matter is very fully discussed, and satisfactorily stated, in *Hill* v. *Wells*, 6 Pick. 104, the authority of which is not to be questioned; and it goes far to decide the present case. A previous act, *St.* 1799, *c.* 81, passed March 4th 1800, had transferred the criminal business in the town of Boston to the municipal court; and the supreme judicial court held, in that case, that this statute, transferring the criminal business to that court, transferred the jurisdiction of the court of sessions in bastardy cases. One strong consideration is, that prior to 1800, the jurisdiction in bastardy was vested in the court of sessions, which was exclusively a court of criminal jurisdiction, with some administrative functions; but the court of common pleas was a court exclusively of civil jurisdiction. So it remained, with the exception of the municipal court already stated, till the whole system was changed by *St.* 1803, *c.* 154. By this act, all the judicial powers of the court of sessions in criminal matters was transferred to the court of common pleas, and nothing remained to the court of sessions but the subject of roads, licenses, taxes, and other administrative management of the prudential affairs of the county. This transfer of criminal jurisdiction did not extend to Boston, because that had been already transferred to the municipal court. After this act of 1803 passed, all jurisdiction, both civil and criminal, being vested in the court of common pleas, in other counties than Suffolk, that court had jurisdiction in cases of bastardy, whether it belonged to the one or the other of these classes; and no question could arise on the subject, except in Suffolk until the above act, dividing the business of the court of

common pleas for the county of Middlesex. Upon the author-
ity, and for the reasons given, in the case of *Hill* v. *Wells*,
the court are of opinion — being obliged to determine whether
the proceeding in bastardy is ` civil or criminal — that it be-
longs to the class of criminal proceedings.

The fact, that the unquestioned jurisdiction, for a long series
of years, was in a court of exclusively criminal jurisdiction,
and was so continued until the whole criminal jurisdiction
was transferred to a court having previously civil jurisdiction,
is a consideration of great weight.

The commencement of the proceeding in bastardy is by a
complaint to a magistrate, a warrant, an arrest, an examina-
tion, and a commitment to jail, unless the party accused shall
give bond to appear and answer, and abide the order of the
court; which bond shall remain in force from term to term
until a final judgment. Rev. Sts. c. 49. That judgment is
not a simple decree for the payment of money to the com-
plainant; but, upon a conviction, the respondent is to be
adjudged the father of the child, and shall stand charged, &c.
and shall give bond, with sureties, to perform the order and
to indemnify and save harmless any town which might be
chargeable with the maintenance of the child. This adjudi-
cation is not to be carried into effect by an execution, like a
judgment in a civil action, but he shall be committed to jail
until he give such bond. And a man committed for a failure
to comply with such order, and who shall have been impris-
oned ninety days, may have the benefit of the poor debtors'
oath; but he must give thirty days' notice, both to the com-
plainant and to the town; and if the complainant be dead, he
must still give notice to the town. It was intimated, in the
case of *Hill* v. *Wells*, that a defendant, when committed
for a failure to comply with the order of court, could not
be discharged on taking the poor debtors' oath. The re-
vised statutes do provide for such a discharge. ` Those stat
utes were indeed passed after that judgment was given; but
they followed, in this respect, the provisions of *St.* 1825,
c. 173, passed March 4th 1826, to which the attention

of the court, probably, was not drawn. But it equally well supports the argument, that the mode of taking the poor debtors' oath is entirely different from that provided for a discharge from imprisonment on execution, on a judgment in a civil case.

It is also stated in the case of *Hill* v. *Wells,* that a town has no remedy, unless the complainant voluntarily prosecutes That is true. The town can have no remedy unless she *voluntarily prosecutes;* but when she does voluntarily prosecute to a conviction and order of filiation, then the town has a remedy on the bond, if one be given, or on the order of court requiring such bond, and the order of commitment, if he fail to give such bond. And after such a discharge, *both the complainant* and the town have a remedy by an action of debt. Rev. Sts. *c.* 49, §§ 5, 6.

Although, therefore, the prosecution must be commenced by the mother, and the principal object is her relief, and in that respect the prosecution partakes of the character of a civil suit, yet because it originates in a transaction which the law deems criminal, and has been prosecuted in a court of criminal jurisdiction, we are of opinion that that branch of the jurisdiction of the court of common pleas, by the statute in question, was properly vested in the court having criminal jurisdiction, and that this complaint was properly entered there.

It was stated, in the argument, to be now the practice, in the county of Suffolk, to carry these proceedings, not into the municipal court, but into the court of common pleas; but no case has been cited. But if it is so, as we are inclined to think it is, we think it is by force of the Rev. Sts. passed since the decision in *Hill* v. *Wells.* It is competent for the legislature to commit this jurisdiction to any competent court; and we see they have heretofore transferred it, in other counties, to the court of common pleas. By the Rev. Sts. *c.* 49, § 1, this jurisdiction is committed generally, without distinction of counties, to the court of common pleas. This would transfer the jurisdiction from the municipal court to the court of common pleas, if there is nothing in the revised statutes, or in

some subsequent statute, to control it. We have already seen that when *Hill* v. *Wells* was decided, in 1828, the jurisdiction was in the municipal court.

The case of *Jordan* v. *Lovejoy*, 20 Pick. 86, came before this court in March 1838, being debt on a bastardy bond given with condition to appear at the municipal court. No question was then made, whether that court had jurisdiction in bastardy ; but on recurring to the facts, it appears that the proceedings took place in the municipal court, in 1834, before the revised statutes, and therefore does not affect this question. It would seem then that, by force of the express provision in the revised statutes, the jurisdiction in this class of cases, in Suffolk, is now vested in the court of common pleas. But if it be so, of which we give no opinion, it does not affect this case. The question does not depend on general reasoning, but upon statute provisions. And the only question is, under what class of the two departments of the court of common pleas in Middlesex, bastardy falls; and, for the reasons given, we think it is the criminal.

*Order dismissing this suit set aside, and case remanded to the next term of the court of common pleas for criminal business.*